# IN THE UNITED STATES DISTRICT COURT

# FOR THE WESTERN DISTRICT OF WISCONSIN

---

**QURAN T. JOHNSON and ERIKA BELL,**

Plaintiffs,

v.

**CITY OF FITCHBURG, WISCONSIN;**

OFFICER JUAN HINOJOS, individually and in his official capacity;

OFFICER BRIANNA KOELLER, individually and in her official capacity;

OFFICER GARETT CHISHOLM, individually and in his official capacity;

OFFICER ERICA BRAUN, individually and in her official capacity;

SGT. PETER JOHNSTON, individually and in his official capacity;

OFFICER JONATHAN VANG, individually and in his official capacity;

OFFICER TYLER NEWELL, individually and in his official capacity;

OFFICER ISAAC NORMAN, individually and in his official capacity;

OFFICER JOHN DOE #2, individually and in his official capacity;

OFFICER JOHN DOE #3, individually and in his official capacity,**

Defendants.

Case No.: _____

## COMPLAINT FOR DAMAGES PURSUANT TO 42 U.S.C. §§ 1983 AND 1985

### JURY TRIAL DEMANDED

---

## I. NATURE OF THE ACTION

1. This is a civil rights action brought pursuant to 42 U.S.C. §§ 1983 and 1985, and the First, Fourth, Fifth, Sixth, and Fourteenth Amendments to the United States Constitution, seeking compensatory and punitive damages for violations of Plaintiffs' constitutional rights by officers of the Fitchburg Police Department and the City of Fitchburg, Wisconsin.

2. Plaintiff Quran T. Johnson and Plaintiff Erika Bell were subjected to unlawful detention, unlawful search, coerced surrender of biological material, warrantless digital device search, excessive force, retaliatory targeting, deliberate indifference to medical needs, denial of access to counsel and family, and intentional infliction of emotional distress by Fitchburg Police Department officers on February 14, 2026, March 6, 2026, March 11, 2026, and April 16, 2026.

3. The City of Fitchburg maintained customs, policies, and practices that were the moving force behind the constitutional violations suffered by Plaintiffs, including a pattern and practice of excessive force, failure to train, failure to supervise, and deliberate indifference to known patterns of officer misconduct.

## II. JURISDICTION AND VENUE

4. This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343 because this action arises under the Constitution and laws of the United States, specifically 42 U.S.C. §§ 1983 and 1985.

5. Venue is proper in the Western District of Wisconsin pursuant to 28 U.S.C. § 1391(b) because all events giving rise to this action occurred in Fitchburg, Madison, and Monona, Dane County, Wisconsin, which lies within this judicial district.

## III. PARTIES

6. Plaintiff **Quran T. Johnson** is a resident of Rockford, Illinois, residing at 2807 Lawndale Ave, Rockford, Illinois 61101.

7. Plaintiff **Erika Bell** is a resident of Fitchburg, Wisconsin, residing at 2775 Novation Pkwy, #103, Fitchburg, Wisconsin 53713.

8. Defendant **City of Fitchburg** is a municipal corporation organized under the laws of the State of Wisconsin, operating the Fitchburg Police Department located at 5520 Lacy Road, Fitchburg, Wisconsin 53711.

9. Defendant **Officer Juan Hinojos** is, and was at all relevant times, a sworn K9 law enforcement officer employed by the Fitchburg Police Department, acting under color of state law. He is sued individually and in his official capacity.

10. Defendant **Officer Brianna Koeller** is, and was at all relevant times, a sworn law enforcement officer employed by the Fitchburg Police Department, acting under color of state law. She is sued individually and in her official capacity.

11. Defendant **Officer Garett Chisholm** is, and was at all relevant times, a sworn law enforcement officer employed by the Fitchburg Police Department, acting under color of state law. He is sued individually and in his official capacity.

12. Defendant **Officer Erica Braun** (Badge #256) is, and was at all relevant times, a sworn law enforcement officer employed by the Fitchburg Police Department, acting under color of state law. She is sued individually and in her official capacity.

13. Defendant **Sgt. Peter Johnston** is, and was at all relevant times, a supervising sergeant employed by the Fitchburg Police Department, acting under color of state law. He is sued individually and in his official capacity.

14. Defendant **Officer Jonathan Vang** is, and was at all relevant times, a sworn law enforcement officer employed by the Fitchburg Police Department, acting under color of state law. He is sued individually and in his official capacity.

15. Defendant **Officer Tyler Newell** is, and was at all relevant times, a sworn law enforcement officer employed by the Fitchburg Police Department, acting under color of state law. He is sued individually and in his official capacity.

16. Defendant **Officer Isaac Norman** is, and was at all relevant times, a sworn law enforcement officer employed by the Fitchburg Police Department, acting under color of state law. He is sued individually and in his official capacity.

17. Defendant **Officer John Doe #2** is a law enforcement officer whose identity is not yet known to Plaintiffs. This officer was present at the April 16, 2026 nature preserve incident, was observed wearing a sheriff's vest, and stated: "you can breathe fine, that's why you're talking" — while Plaintiff Quran lay prone under multiple officers, crying and stating he could not breathe. Plaintiffs will seek to amend this complaint to name this officer once his identity is ascertained through discovery.

18. Defendant **Officer John Doe #3 ("Ruszka" or similar spelling)** is a law enforcement officer whose full name and badge number are not yet known to Plaintiffs. This officer was present at the April 16, 2026 nature preserve incident and was observed wearing a sheriff's vest, as documented in photographs and video taken by Plaintiff Erika Bell. The Fitchburg Police Department Records Bureau confirmed this officer's presence but provided only a partial surname. Plaintiffs will seek to amend this complaint to name this officer once his identity is confirmed through discovery.

---

## IV. FACTUAL ALLEGATIONS

### A. The February 14, 2026 Traffic Stop

19. On February 14, 2026, at approximately 6:00 PM, Plaintiff Erika Bell was operating her 2018 Mercedes E-Class on USH 12 Eastbound at the South Towne Drive

off-ramp, Dane County, Wisconsin. Plaintiff Quran T. Johnson was a passenger. Prior to the stop, Plaintiff Quran had consumed approximately five shots of alcohol.

20. Officers Hinojos, Koeller, and Chisholm of the Fitchburg Police Department conducted a traffic stop of Plaintiffs' vehicle. [FPD Case No. FP26-06370.] The stated basis was a window tint violation and a temporary license plate. The temporary license plate was posted and visible in the upper left corner of the rear window. Officers Stephens (Monona PD) and Lewis (Madison PD) were present as backup but did not participate in the stop, search, or detention of Plaintiffs.

21. Officer Hinojos approached the driver's side and positioned himself in extremely close proximity to Plaintiff Erika's window. Plaintiff Erika asked him to step back, stating she could have COVID. Officer Hinojos stated he did not care and remained close. Plaintiff Erika produced her driver's license and identified her insurance carrier. Officer Koeller approached the passenger side.

22. Officer Koeller requested identification from Plaintiff Quran. Plaintiff Erika advised Officer Koeller that as a passenger, Plaintiff Quran had no legal obligation to provide identification.

23. Officer Koeller immediately directed Officer Hinojos to detain Plaintiff Erika at the front of the squad car. Plaintiff Erika complied and was held there without arrest or charges.

24. While Plaintiff Erika stood at the front of the squad car, additional officers arrived on scene. Plaintiff Erika looked toward the arriving vehicles. Officer Koeller exited her squad car, yelled at Plaintiff Erika, and told her she was "getting in the vehicle." When Plaintiff Erika asked why, Officer Koeller grabbed Plaintiff Erika at the location of her Nexplanon contraceptive implant on her upper arm, causing immediate pain, and forcibly placed her into the back of a police vehicle.

25. After Plaintiff Erika was removed, Officer Hinojos returned to the passenger side and asked Plaintiff Quran his name. Plaintiff Quran asked: "Do I have to give you my name?" Officer Hinojos replied: "No, I just like to get your name so I have something to refer to you by." Plaintiff Quran said: "My name is Terry." Officer Hinojos then went to Officer Koeller's squad car and told Koeller that the passenger was not trying to give him a name. Officer Hinojos returned and asked for a last name, stating: "I just want a last name for my report." When Plaintiff Quran paused, Officer Hinojos said: "do you have something to hide, do you have warrants or something?" Plaintiff Quran said no and provided the last name "Johnson." Officer Hinojos went back and forth between Plaintiff Quran and Officer Koeller's squad car three to four additional times before ultimately claiming Plaintiff Quran was providing a false name.

26. Officer Hinojos ordered Plaintiff Quran out of the vehicle and placed him in handcuffs, stating "stop resisting" before any resistance occurred. Plaintiff Quran said he

was not resisting. Officer Hinojos asked: "why did you lie about who you are, are you on probation?" When Plaintiff Quran confirmed he was on probation, Officer Hinojos stated: "ohh there it is." Officer Hinojos searched Plaintiff Quran's pockets and found only a wallet and an empty plastic bag. Nothing incriminating was found on Plaintiff Quran's person.

27. Plaintiff Quran told Officer Hinojos he was having trouble breathing due to prior back surgeries. Officer Hinojos asked Plaintiff Quran if he needed EMS. EMS arrived, noted Plaintiff Quran's oxygen level was below normal, and recommended he be restrained in front cuffs to alleviate the restriction of his breathing caused by rear cuffing. Officers Hinojos and Koeller received this recommendation directly from EMS. EMS departed without transporting Plaintiff Quran.

28. After Plaintiff Quran was secured in the squad car, Officer Hinojos used ID from Plaintiff Quran's wallet to confirm his identity and probation status. Officer Hinojos then returned to Plaintiff Erika's vehicle and — for the first time — claimed to smell something from the vehicle. No odor claim had been made during the initial approach or during the extended exchange with Plaintiff Quran. Officer Koeller asked Plaintiff Erika if there were drugs in the car; she said no.

29. Officer Hinojos searched the vehicle and found nothing. He then deployed his K9. Following the K9 pass, Officer Hinojos told Plaintiff Quran: "we found a black bag" — but had a brown paper bag in his hand. Officer Hinojos stated: "we found something underneath your seat, some drugs under the seat. It looks like crack." Plaintiff Quran said the drugs were not his or Plaintiff Erika's. The substance was recovered during a period when officer body-worn cameras were deactivated or not activated.

30. Officer Koeller told Plaintiff Erika officers had found drugs under the passenger seat and asked whether she knew Plaintiff Quran had drugs or whether he sold drugs. Plaintiff Erika denied any knowledge.

31. As Plaintiff Erika returned to her vehicle, Officer Hinojos attempted to seize both of Plaintiff Erika's cell phones — her personal phone and Plaintiff Quran's phone — stating he did not know which belonged to whom. After Plaintiff Erika identified her own phone, Officer Hinojos seized only Plaintiff Quran's phone. The attempt to seize Plaintiff Erika's phone was made without consent, without a warrant, and without legal basis.

32. Plaintiff Quran alleges and believes he was never informed of his right to refuse the exit order, and was never administered Miranda warnings at the scene.

### B. The February 14, 2026 Custodial Interrogation — Fitchburg Police Station

33. Plaintiff Quran was transported to the Fitchburg Police Department station by Officer Koeller. Plaintiff Quran alleges and believes he was never administered Miranda warnings prior to or during the custodial interrogation that followed.

34. During an interrogation lasting approximately one to two hours, Officers Hinojos and Koeller repeatedly asked whose drugs they were, where Plaintiff Quran obtained drugs, and for names and contact information of his drug sources. Plaintiff Quran denied owning the drugs but acknowledged personal drug use. Officer Hinojos stated: "If you tell us who you get your stuff from, none of this would happen." Plaintiff Quran told Officer Hinojos he did not want to give names because doing so would place him in danger. Officer Hinojos said: "they will never know, we won't use your name" and "not making promises but if it checks out it will be good, have faith in us." Plaintiff Quran told Officer Koeller that Officer Hinojos was "scaring the shit out of him" with the repeated questions about his drug sources.

35. During the interrogation, Plaintiff Quran asked to use the restroom. Officer Hinojos escorted him and instructed him not to flush.

36. In response to the officers' repeated promises and assurances, Plaintiff Quran provided approximately two to three fabricated names and details. Officers then told Plaintiff Quran they had run the information through their sergeant and called his probation officer, leaving a message that Plaintiff Quran had cooperated and was not being charged — that he was on a probation hold only. Plaintiff Quran was subsequently held for approximately four days in the Dane County Jail.

37. Toward the conclusion of the interrogation, Officer Hinojos asked Plaintiff Quran to submit to a buccal DNA swab. Officer Hinojos told Plaintiff Quran the swab was "customary," that it "looks good for the judge and everyone else," and that it "looks like you don't have anything to hide." No Miranda warnings had been administered. No consent form was presented. Plaintiff Quran, in an intoxicated state, submitted to the swab. Plaintiff Quran consented because he believed he had no right to refuse and was never informed that he could refuse.

38. Officer Hinojos also asked Plaintiff Quran to allow a search of his cell phone, stating officers wanted to look for "pictures of drugs and gang activity" and that compliance would "look good." Plaintiff Quran acquiesced because he believed he had no right to refuse and was never informed that he could refuse. Officer Hinojos reviewed Plaintiff Quran's photographs and text messages without a warrant.

39. That same evening, Officer Hinojos appeared at Plaintiff Erika's residence, returned cards from Plaintiff Quran's wallet, and stated officers were not pressing charges and the matter was being handled as a probation hold only.

## C. The March 6, 2026 Residential Contact

40. On March 6, 2026, at approximately 7:03 PM, Officers Vang and Newell appeared at Plaintiff Erika's residence at 2775 Novation Pkwy, #103, Fitchburg, Wisconsin, looking for Plaintiff Quran. Officer Newell told Plaintiff Erika that Plaintiff Quran was being charged with possession of cocaine — directly contradicting Officer

Hinojos's February 14, 2026 representation that no charges would be filed. Officers stated drug testing had returned positive for cocaine but provided no documentation, lab reports, or field test records.

## D. The March 11, 2026 Residential Contact

41. On March 11, 2026, at approximately 5:04 PM, Officers Hinojos and Braun appeared at Plaintiff Erika's residence looking for Plaintiff Quran. Plaintiff Erika was not home. Officer Hinojos subsequently called Plaintiff Erika and told her a warrant had been issued for Plaintiff Quran's arrest. No such warrant existed at that time, a fact later confirmed by Plaintiff Quran's probation officer, who had no knowledge of any warrant at Plaintiff Quran's scheduled appointment on March 28, 2026.

## E. The April 16, 2026 Encounter — Nature Preserve

42. On April 16, 2026, Plaintiff Quran and Plaintiff Erika drove approximately five minutes from Plaintiff Erika's residence to a public nature preserve in Fitchburg/Madison, Dane County, Wisconsin, and parked. Within approximately two minutes of their arrival, a squad car appeared. Photographs taken by Plaintiff Erika document the presence of multiple officers and vehicles, including an unmarked dark gray Ford Explorer (Wisconsin plate E1789) and an unmarked blue Subaru (Wisconsin plate 643-ZDY).

43. Officer Hinojos exited the squad car and called out to Plaintiff Quran by his first name before any identification had occurred. Plaintiff Quran later stated: "he asked my name like he kinda already knew." Officer Hinojos activated his arrest lights and directed both Plaintiffs to approach.

44. Officer Hinojos told Plaintiff Quran a warrant existed for his arrest. No warrant existed. Officer Hinojos stated: "Place your hands behind your back, you're under arrest." Plaintiff Quran asked Officer Hinojos to wait due to his back and arm injuries and requested to be cuffed in the front. Officer Hinojos told Plaintiff Quran to stop resisting. Plaintiff Quran said he was not resisting.

45. Plaintiff Erika called undersigned counsel by phone as the encounter escalated. Counsel spoke with an unnamed officer on scene who confirmed a warrant existed for Plaintiff Quran's arrest. Counsel asked whether the warrant had been shown to either Plaintiff. The officer said he did not have to show a warrant, told counsel to "shut up," said he was "not afraid" of counsel, and refused to speak further with her. Counsel instructed Plaintiff Erika to end the call and begin recording. Plaintiff Erika began recording.

46. Officer Hinojos threw Plaintiff Quran onto the hood of the car with his arm bent behind his back, stating "you're under arrest." Within seconds, two additional officers arrived and ran to assist. Officers slammed Plaintiff Quran against the vehicle

again and slammed him to the ground into bushes. Four or more officers placed themselves on top of Plaintiff Quran's body with their knees in his back and on his head for approximately five minutes while he repeatedly cried out that he could not breathe and that his arm and neck were in pain. John Doe #2 responded: "you can breathe fine, that's why you're talking." Sgt. Johnston was present throughout as the supervising officer and participated and did not intervene.

47. While officers were on top of Plaintiff Quran, they repeatedly asked "what do you have on you." Officers recovered only a brush and Plaintiff Quran's wallet. Officers pulled Plaintiff Quran off the ground and either double-cuffed him or added links to the cuffs. Plaintiff Quran's breathing remained restricted. Officer Hinojos stated: "you are going straight to Dane County, we aren't asking you any more questions."

48. Plaintiff Quran alleges and believes he was never read his Miranda rights at any point on April 16, 2026.

49. All officers present at the nature preserve deactivated their body-worn cameras or never activated them during the encounter.

50. Plaintiff Quran was transported by ambulance to UnityPoint Health — Meriter Hospital, Madison, Wisconsin, where he received emergency medical treatment for back and shoulder injuries from approximately 2:30 PM to 9:43 PM CDT. Plaintiff Quran was also treated for incontinence resulting from the trauma of officers' actions during the April 16 encounter, having urinated on himself approximately three times.

### F. Erika Bell's Vehicle Search — April 16, 2026

52. After Plaintiff Quran was transported, Officer Hinojos told Plaintiff Erika her vehicle could not leave because it was "an open investigation." Officer Hinojos deployed his K9 around Plaintiff Erika's vehicle. The K9 officer claimed the dog "hit on something" and demanded Plaintiff Erika's keys. Plaintiff Erika refused. An officer said: "that is okay, we don't need them" — reached through the partially cracked window and unlocked the vehicle from the inside without Plaintiff Erika's consent. Officers searched the entire vehicle, including the trunk and all closed containers, without a warrant, without consent, and without exigent circumstances.

53. Officers recovered marijuana in the trunk inside a sealed bag inside a shoe. An officer stated within undersigned counsel's hearing: "this is 15 grams." Plaintiff Erika disputed the weight, stating it was less than three grams and within the personal use limit. Officers did not arrest Plaintiff Erika. No other contraband was found.

### G. The April 16, 2026 Encounter — Meriter Hospital

51. Officer Norman rode in the ambulance with Plaintiff Quran. Plaintiff Quran asked Officer Norman why he was being arrested when he had previously cooperated.

Officer Norman said he did not know but that he had been asked to assist with a "PC arrest" directed by someone above him.

54. At Meriter Hospital, Officer Braun failed to activate her body-worn camera at any point during a multi-hour custodial encounter with Plaintiff Quran and issued a Notice to Appear while Plaintiff Quran was receiving emergency medical treatment.

55. Officer Hinojos arrived at the hospital when Plaintiff Quran first arrived. Plaintiff Quran asked why he was being charged given his prior cooperation. Officer Hinojos replied: "We gave it to narcotics and none of it was true." Plaintiff Quran responded: "But it was true, the guy calls me all the time." Officer Hinojos said: "I have to go, I have court" and left.

56. Officer Braun relieved Officer Norman after approximately one hour. Plaintiff Quran asked Officer Braun what his charges were and why so many officers had come after him. Officer Braun said: "we were just in the area, it wasn't like we were looking for you, there were 2 other drug dealers in the area they were looking for, you were not high up on our list."

57. Officer Braun made the following statements during the hospital encounter: (a) admitted that no warrant existed — only probable cause; (b) stated a summons was "only for old people"; (c) stated "there were 26 DAs in the state and many of them are new, and they like cases that are juicy"; (d) stated "I can make the report really big or really small, and anything you think is off the record, it's not — I can add all of it"; (e) after Plaintiff Erika via FaceTime instructed Plaintiff Quran to call his attorney, stated "she's real peachy" and then said "if you're going to subpoena me, I am going to Mirandize you now"; and (f) disclosed to Sgt. Johnston via text that Plaintiff Quran "had issues and wet himself." Plaintiff Quran urinated on himself multiple times at the hospital from the trauma sustained during the April 16 encounter.

58. Sgt. Johnston was texting Officer Braun in real time from outside the hospital, actively inquiring about Plaintiff Quran's condition.

59. On April 16, 2026, at approximately 9:10 PM, undersigned counsel transmitted video footage of the April 16 excessive force incident to Chief Alfonso Morales via email, identifying the BWC deactivation, the probable cause hold, the sustained force against Plaintiff Quran, and the warrantless search of Plaintiff Erika's vehicle. The City of Fitchburg took no remedial action in response.

60. Throughout his hospital stay, Plaintiff Quran repeatedly asked Officer Braun to contact his family. Officer Braun denied each request. For approximately seven hours, Plaintiff Erika called the Fitchburg Police Department attempting to locate Plaintiff Quran and received no information. Plaintiff Erika discovered Plaintiff Quran's location only by calling Meriter Hospital directly, at which time she was told he had just been discharged.

61. Officer Braun told Plaintiff Quran: "you're not going to be arrested tonight, I talked to my sergeant, he asked how have you been." A Notice to Appear was then issued with a court date of June 1, 2026 at 8:30 AM.

## H. Selective Disclosure and Report Manipulation

62. On April 23, 2026, Plaintiff Erika contacted the Fitchburg Police Department Records Bureau to inquire about officers listed on the April 16 incident report. The Records Bureau confirmed that Officer Koeller was present at the April 16 incident but was omitted from the incident report because she was "only there for a short time." The litigation hold had been served on April 21, 2026 — two days before this disclosure.

63. The Records Bureau refused to provide the names and badge numbers of non-Fitchburg officers present at the April 16 incident, despite having previously provided multi-jurisdiction officer information in connection with the February 14, 2026 stop.

---

## V. CLAIMS FOR RELIEF

## COUNT I — EXCESSIVE FORCE

### Against Officers Koeller and Hinojos (February 14, 2026)

*(42 U.S.C. § 1983 — Fourth Amendment)*

64. Plaintiffs incorporate all preceding paragraphs.

65. Officer Koeller used excessive force against Plaintiff Erika Bell by forcibly grabbing her at the site of her Nexplanon contraceptive implant and forcibly confining her in a police vehicle when she had committed no offense and offered no resistance.

66. As a direct result, Plaintiff Erika suffered physical injury, pain, and emotional distress.

---

## COUNT II — EXCESSIVE FORCE

### Against Officers Hinojos, Koeller, Chisholm, Braun, Sgt. Johnston, and John Does #2 and #3 (April 16, 2026)

*(42 U.S.C. § 1983 — Fourth Amendment)*

67. Plaintiffs incorporate all preceding paragraphs.

68. Officers slammed Plaintiff Quran against a vehicle hood with knowledge of his prior scapula injury, forced him to the ground, and placed four or more officers on top

of his body for approximately five minutes while he repeatedly cried out that he could not breathe. This force was objectively unreasonable.

69. Officers Hinojos and Koeller had actual prior knowledge of Plaintiff Quran's scapula injury from the February 14 encounter. Both were again put on notice at the scene on April 16 by Plaintiff Erika and by Plaintiff Quran's own requests. They nevertheless applied force to the same injury site and denied his request for front cuffing.

70. Sgt. Johnston, as the supervising officer present throughout the encounter, observed the force and did not intervene.

71. As a direct result, Plaintiff Quran suffered back and shoulder injuries, respiratory distress, and emotional distress.

---

## COUNT III — UNLAWFUL SEIZURE AND SEARCH

### Against Officers Hinojos, Koeller, and Chisholm

*(42 U.S.C. § 1983 — Fourth Amendment)*

72. Plaintiffs incorporate all preceding paragraphs.

73. The detention of Plaintiff Erika Bell and her forcible confinement in a police vehicle was not supported by reasonable suspicion of criminal activity.

74. The vehicle search on February 14 was unlawful. Officer Hinojos claimed an odor only after Plaintiff Quran was already in custody and after a manual search found nothing. No odor claim was made during the initial approach. Plaintiff Quran was not the person in control of the vehicle. The substance was recovered during a period when body-worn cameras were deactivated or not activated.

75. Officer Hinojos's attempt to seize Plaintiff Erika's personal cell phone without consent, without a warrant, and without legal basis was an additional unlawful seizure.

76. On April 16, 2026, officers searched Plaintiff Erika's vehicle without consent, without a warrant, and without exigent circumstances. Officers gained entry by reaching through a cracked window and unlocking the vehicle from inside after Plaintiff Erika explicitly refused to provide her keys. Officers then searched the entire vehicle including the trunk and all closed containers.

77. As a direct result, Plaintiffs suffered damages as described herein.

---

## COUNT IV — UNLAWFUL WARRANTLESS DNA COLLECTION

### Against Officer Hinojos

*(42 U.S.C. § 1983 — Fourth Amendment)*

78. Plaintiffs incorporate all preceding paragraphs.

79. Officer Hinojos obtained a buccal DNA swab from Plaintiff Quran during the February 14 custodial interrogation through false representations that the swab was "customary" and would benefit Plaintiff Quran before the court. No warrant existed. No consent form was presented. Plaintiff Quran was intoxicated and had not been Mirandized. No chain of custody documentation has been provided to Plaintiffs.

80. As a direct result, Plaintiff Quran suffered violation of his bodily integrity and genetic privacy.

---

## COUNT V — UNLAWFUL WARRANTLESS CELL PHONE SEARCH

### Against Officer Hinojos

*(42 U.S.C. § 1983 — Fourth Amendment)*

81. Plaintiffs incorporate all preceding paragraphs.

82. Officer Hinojos searched Plaintiff Quran's cell phone — including photographs and text messages — without a warrant. Any consent given was obtained through psychological manipulation during a custodial interrogation of an intoxicated, un-Mirandized individual and was not voluntary.

83. As a direct result, Plaintiff Quran suffered violation of his Fourth Amendment rights.

---

## COUNT VI — DELIBERATE INDIFFERENCE TO SERIOUS MEDICAL NEEDS

### Against Officers Hinojos, Koeller, and Sgt. Johnston

*(42 U.S.C. § 1983 — Fourteenth Amendment)*

84. Plaintiffs incorporate all preceding paragraphs.

85. Plaintiff Quran's scapula injury, restricted breathing, and below-normal oxygen levels — documented by EMS on February 14, 2026 — constituted a serious medical need. EMS recommended front cuffing. Officers Hinojos and Koeller received this recommendation directly and ignored it.

86. On April 16, 2026, Officers Hinojos, Koeller, and at least two other officers with knowledge of Plaintiff Quran's injury deliberately applied force to the same injury site, denied his repeated requests for front cuffing, and maintained a prone restraint for approximately five minutes while Plaintiff Quran cried and stated he could not breathe.

An officer responded: "Oh, so he's been arrested before" and laughed. Sgt. Johnston was present and took no action.

87. As a direct result, Plaintiff Quran suffered aggravated scapula and back injuries, respiratory distress, and other damages.

---

## COUNT VII — DENIAL OF ACCESS TO COUNSEL AND FAMILY

### Against Officer Braun

*(42 U.S.C. § 1983 — Sixth and Fourteenth Amendments)*

88. Plaintiffs incorporate all preceding paragraphs.

89. During Plaintiff Quran's hours-long custodial detention at Meriter Hospital, Officer Braun denied every request by Plaintiff Quran to contact his family. When Plaintiff Erika instructed Plaintiff Quran via FaceTime to call his attorney, Officer Braun threatened to Mirandize Plaintiff Quran as retaliation and referred to Plaintiff Erika as "real peachy."

90. Plaintiff Erika had no information about Plaintiff Quran's whereabouts for approximately seven hours and located him only by calling the hospital directly.

91. As a direct result, Plaintiffs suffered deprivation of the right to counsel and family contact, anxiety, and emotional distress.

---

## COUNT VIII — COERCED COOPERATION

### Against Officer Hinojos

*(42 U.S.C. § 1983 — Fifth and Fourteenth Amendments)*

92. Plaintiffs incorporate all preceding paragraphs.

93. Officer Hinojos used false promises of non-prosecution, false representations of legal custom, and continued pressure for informant names to extract Plaintiff Quran's cooperation, biological sample, and cell phone access — all without Miranda warnings and while Plaintiff Quran was intoxicated. When Plaintiff Quran explicitly stated that providing informant names would place him in physical danger, Officer Hinojos continued pressing with false assurances that his identity would be protected.

94. As a direct result, Plaintiff Quran suffered continued prosecution, retaliatory targeting, and emotional distress.

---

### COUNT IX — RETALIATORY TARGETING

**Against Officer Hinojos and All April 16 Officers**

*(42 U.S.C. § 1983 — First and Fourth Amendments)*

95. Plaintiffs incorporate all preceding paragraphs.

96. Officer Hinojos admitted to Plaintiff Quran at Meriter Hospital — in the presence of Officer Norman — that the April 16 encounter was triggered by the failure of Plaintiff Quran's informant cooperation: "The information you gave wasn't true. We gave it to narcotics and they said it wasn't true." The April 16 operation was retaliatory, not an independent law enforcement action.

97. As a direct result, Plaintiff Quran suffered physical injury, emotional distress, and other damages.

---

### COUNT X — STATE-CREATED DANGER

**Against Officer Braun**

*(42 U.S.C. § 1983 — Fourteenth Amendment)*

98. Plaintiffs incorporate all preceding paragraphs.

99. Officer Braun affirmatively failed to activate her body-worn camera throughout her entire custodial encounter with Plaintiff Quran at Meriter Hospital. Officer Braun explicitly threatened: "I can make the report really big or really small, and anything you think is off the record, it's not — I can add all of it." This threat — to weaponize statements Plaintiff Quran made outside any Miranda framework, including information about drug sources that Plaintiff Quran had stated would place him in physical danger — created a distinct risk that Plaintiff Quran's identity as an informant would be exposed or that fabricated information would be added to an official report he could not contest without any contemporaneous record.

100. As a direct result, Plaintiff Quran suffered ongoing injury including continued prosecution and fear for personal safety.

---

### COUNT XI — FAILURE TO INTERVENE

**Against Officer Chisholm (February 14, 2026) and Sgt. Johnston (April 16, 2026)**

*(42 U.S.C. § 1983 — Fourth Amendment)*

101. Plaintiffs incorporate all preceding paragraphs.

102. Officer Chisholm was present when Officer Koeller physically seized Plaintiff Erika Bell and forcibly confined her in a police vehicle. Officer Chisholm had the opportunity and duty to intervene and did not.

103. Sgt. Johnston was present as the supervising officer throughout the entire April 16 use-of-force sequence, observed the unconstitutional conduct of his subordinates, had authority and duty to intervene, and did not do so at any point.

104. As a direct result, Plaintiffs suffered the harms described herein.

---

## COUNT XII — SUPERVISORY LIABILITY

### Against Sgt. Peter Johnston

*(42 U.S.C. § 1983)*

105. Plaintiffs incorporate all preceding paragraphs.

106. Sgt. Johnston was present at the April 16, 2026 incident as the supervising officer and directly observed the unconstitutional conduct of his subordinates — including the illegal search of Plaintiff Erika's car, the application of force to a person with a known prior injury, the prolonged prone restraint, and the deactivation or failure to activate body-worn cameras. He condoned the conduct and, by his failure to act, facilitated it.

107. Sgt. Johnston was simultaneously communicating with Officer Braun via text message from outside the hospital regarding Plaintiff Quran's condition, establishing active command-level awareness and coordination. Officers Hinojos and Koeller consulted their sergeant during the February 14 interrogation before informing Plaintiff Quran he was not being charged — evidencing supervisory-level direction of the coercive interrogation tactics used against Plaintiff Quran.

108. As a direct result, Plaintiffs suffered damages as described herein.

---

## COUNT XIII — MUNICIPAL LIABILITY

### Against City of Fitchburg

*(42 U.S.C. § 1983)*

109. Plaintiffs incorporate all preceding paragraphs.

110. The City of Fitchburg is liable for the constitutional violations suffered by Plaintiffs because those violations resulted from the City's official policies, customs, and practices.

111. **Prior lethal force — Sgt. Johnston.** On August 12, 2024, Sgt. Johnston fatally shot Kevin Price during a domestic disturbance. The Dane County District Attorney cleared Sgt. Johnston on December 10, 2024. The City returned Sgt. Johnston to active supervisory duty without any documented retraining, enhanced oversight, or remediation. Less than sixteen months later, Sgt. Johnston stood as the supervising officer while subordinates applied sustained excessive force against Plaintiff Quran and again failed to intervene.

112. **Pattern of substantiated misconduct.** The Fitchburg Police Department's disciplinary records establish a pattern of substantiated misconduct, including multiple reprimands against Officer Lucas Bajana; a finding of sustained misconduct against Sgt. Joshua Lambert for failure to process citizen complaints; and a finding of sustained misconduct against Officer Stephen Bastien — documented in the April 13, 2026 POSTC sustained complaints report.

113. **Coordinated BWC deactivation.** Multiple officers simultaneously deactivated or failed to activate body-worn cameras during the April 16 nature preserve encounter. Officer Braun separately failed to activate her camera throughout a multi-hour hospital encounter. This coordinated suppression of evidentiary records reflects a departmental custom of tolerating or directing the elimination of contemporaneous records during use-of-force encounters.

114. **Post-litigation-hold selective disclosure.** After a litigation hold was served on April 21, 2026, the Records Bureau omitted Officer Koeller from the April 16 incident report and refused to provide names of non-Fitchburg officers present — a pattern of selective disclosure consistent with Officer Braun's explicit admission that she could manipulate the size and content of official reports.

115. **Racial disparate impact.** According to Police Scorecard data for the Fitchburg Police Department from 2013 through 2023, Black residents were 10.5 times more likely to be arrested for low-level, non-violent offenses than white residents — notwithstanding that Black residents comprise approximately 9% of Fitchburg's population. Latinx residents were 2.6 times more likely to face such arrests. Plaintiff Quran T. Johnson, a Black man, was physically arrested and held for four days for a misdemeanor while Officer Braun stated a summons was "only for old people."

116. **Command-level knowledge.** On April 16, 2026, undersigned counsel transmitted video footage of the excessive force incident to Chief Alfonso Morales at 9:10 PM. The City took no remedial action.

117. As a direct result, Plaintiffs suffered all damages described herein.

_____

## COUNT XIV — CONSPIRACY TO DEPRIVE CIVIL RIGHTS

**Against All Individual Defendant Officers**

*(42 U.S.C. § 1985(3))*

118. Plaintiffs incorporate all preceding paragraphs.

119. Two or more of the Defendant officers conspired to deprive Plaintiff Quran T. Johnson of the equal protection of the laws on the basis of race.

120. The April 16, 2026 operation — involving plainclothes officers in an unmarked dark gray Ford Explorer (Wisconsin plate E1789) and an unmarked blue Subaru (Wisconsin plate 643-ZDY) converging on Plaintiffs at a public nature preserve within minutes of their arrival; Officer Hinojos's prior knowledge of Plaintiff Quran's identity and location; the simultaneous coordinated BWC deactivation; the false warrant claim made by multiple officers; Officer Braun's admission of report manipulation and threat to weaponize off-record statements; the real-time text communication between Sgt. Johnston and Officer Braun; and Officer Norman's statement that the operation was directed from above — collectively establish a coordinated conspiracy among multiple state actors.

121. Officers Vang and Newell participated in this conspiracy through their role in the false warrant narrative — appearing at Plaintiff Erika's residence on March 6, 2026 and falsely communicating that Plaintiff Quran was being charged and that a warrant would follow — as part of the coordinated retaliatory scheme.

122. As a direct result, Plaintiffs suffered physical injury, emotional distress, and continued prosecution.

---

## COUNT XV — INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

**Against All Individual Defendant Officers**

*(Wisconsin State Law — Pendent Claim)*

123. Plaintiffs incorporate all preceding paragraphs.

124. The conduct of all Defendant officers — including coercive interrogation without Miranda warnings, psychological manipulation to extract biological material and digital access, sustained application of force to a person with a known injury, intimidation at a hospital bedside, explicit threats of prosecutorial retaliation and exposure to danger, deliberate report manipulation, denial of family contact for seven hours, and deliberate humiliation through disclosure of Plaintiff Quran's medical condition — constitutes extreme and outrageous conduct exceeding all bounds of decency.

125. Plaintiffs suffered and continue to suffer severe emotional distress, physical injury, anxiety, and fear of police contact.

---

## VI. DAMAGES

126. As a direct and proximate result of Defendants' conduct, Plaintiffs seek:

a. Compensatory damages for physical injuries, pain and suffering, emotional distress, medical expenses, lost income, and other consequential damages;

b. Punitive damages against all individual Defendant officers;

c. Nominal damages as appropriate;

d. Attorneys' fees and costs pursuant to 42 U.S.C. § 1988;

e. Injunctive relief requiring the Fitchburg Police Department to implement enhanced body-worn camera policies, use-of-force training, and supervisory oversight protocols; and

f. Such other relief as this Court deems just and proper.

---

## VII. JURY DEMAND

127. Plaintiffs hereby demand a trial by jury on all issues so triable pursuant to Federal Rule of Civil Procedure 38(b).

---

Respectfully submitted,

**SAJIDA JOHNSON, J.D.**

SJW Legal / SJW Consulting LLC

1151 N. Fort Lauderdale Beach Blvd., Unit 1B

Fort Lauderdale, FL 33304

Telephone: (310) 266-6100

Email: sajidaj1@sjwlegal.net

California State Bar No. 363047

Attorney for Plaintiffs Quran T. Johnson and Erika Bell

*Date: April 29, 2026*

*cc: File | Quran T. Johnson | Erika Bell*